UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

ROSALYN L.[1],                        )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )        CIVIL NO.  3:19cv345
                                      )
ANDREW M. SAUL,                       )
Commissioner of Social Security,      )
                                      )
        Defendant.                    )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI), as provided for in the Social

Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to last for a continuous period of no less than 12 months. . . ."

_____

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act

through December 31, 2021.

2.      The claimant has not engaged in substantial gainful activity since January 29, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.      The claimant has the following severe impairments: anxiety with agoraphobia, depression, and lumbar spasms (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can lift no more than 50 pounds occasionally and lift and/or carry up to 25 pounds frequently. The claimant can stand, walk, or sit for 6 hours in an 8-hour workday. She can occasionally climb ladders, ropes or scaffolds, but can frequently stoop, crouch or crawl. She is limited, with respect to the left upper extremity, to frequent overhead reaching, reaching forward and to the side, pushing and/or pulling, handling and fingering. The claimant is limited to no more than occasional exposure to hazards such as unprotected heights or dangerous, moving mechanical parts. The claimant is able to understand, remember and carry out simple and repetitive instructions. She is able to make judgments on simple and repetitive work related decisions. The claimant can respond to usual work situations and to occasional changes in a routine work setting without special supervision with simple and repetitive tasks. She can perform activities within a regular schedule and be punctual within customary tolerances. She is able to maintain concentration, persistence or pace for two-hour blocks but requires a job that provides for a break normally offered to all employees of about 10 minutes and a standard meal break of about 30 minutes. The claimant is limited to no direct interaction with the public but the claimant can work around co-workers and supervisors throughout a standard workday without distracting them or exhibiting behavioral extremes so long as there is no more than brief and superficial interaction with supervisors and co-workers, but the claimant can interact sufficiently to receive daily task assignments and respond to brief status updates in an environment where the worker performs assignments generally alone and independently of others and is responsible only for his/her tasks.

6.      The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on December 9, 1976 and was 39 years old, which is

defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue because the claiant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 29, 2016, through the date of this deciaion (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14- 24 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

This appeal followed.

Plaintiff  filed her opening brief on November 20, 2019.  On December 30, 2019, the

defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff

replied on January 13, 2020. Upon full review of the record in this cause, this court is of the view

that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See*

*Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test

as follows:

The following steps are addressed in order:  (1)  Is the claimant

> presently unemployed?  (2)  Is the claimant's impairment "severe"?
> (3)  Does the impairment meet or exceed one of a list of specific
> impairments?  (4)  Is the claimant unable to perform his or her
> former occupation?  (5)  Is the claimant unable to perform any other
> work within the economy?  An affirmative answer leads either to
> the next step or, on steps 3 and 5, to a finding that the claimant is
> disabled.  A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ's evaluation of her symptoms and limitations is patently wrong.  An ALJ's symptoms evaluation is reviewed for legal error and will be reversed if, overall, the ALJ's factual conclusions are "patently wrong." *See, e.g., Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ's assessment is "patently wrong" when the findings lack adequate explanation or are not "competently" explained, are not supported by substantial evidence from the record as a whole, or are otherwise factually or logically mistaken. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006); *see also Cullinan*, 878 F.3d at 604 (credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence). *See also* 42 U.S.C. § 405(g) (findings of fact conclusive when supported by substantial evidence); 20 C.F.R. § 404.1529. Because each person's response to pain and adversity is unique, a claimant's statements about her symptoms and limitations weighs heavily in the final determination of whether she is disabled. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012); *see also Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011) ("RFC determinations are inherently

intertwined with matters of credibility."). For this reason, the ALJ must support his finding with specific reasons, and those reasons must be supported by substantial evidence and explained well enough for a reviewing court to conduct a thorough review. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); Social Security Ruling (SSR) 16-3p.

Plaintiff argues that the ALJ's assessment of Plaintiff's subjective allegations was patently wrong because the ALJ relied on inferences that were not logically based on specific findings or evidence and because the ALJ did not apply the correct evidentiary standard when he chose not to believe Plaintiff's description of the effect her medically determinable impairments had upon her ability to function, particularly in a work setting.

Before subjective descriptions of symptoms are considered, the evidence must document a "medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the] symptoms." SSR 16-3p; 20 C.F.R. § 404.1529. In this case, the ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
> (Tr. 18).

This finding acknowledges that objective medical evidence establishes "impairment[s] capable of producing [Plaintiff's] alleged symptoms." *See* SSR 16-3p. Thus, the first step of the inquiry was satisfied, and the ALJ was required move to the second step of the symptom evaluation analysis where more than just the "objective" evidence carries weight. 20 C.F.R. § 404.1529(c)(3). *See also* 20 C.F.R. § 404.1529(c)(4) ("Your symptoms . . . will be determined to diminish your

capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the . . . evidence."); SSR 16-3p. As this Court has acknowledged, "the whole point of the credibility determination is to determine whether the claimant's allegations are credible despite the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, 2014 WL 1047817, at \*9 (N.D. Ind. Mar. 18, 2014).

Plaintiff contends that the ALJ failed to assess Plaintiff's credibility before determining her RFC, and instead decided her statements were not "consistent" and sought support for his conclusion. This is "backward reasoning." *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1042 (N.D. Ind. 2010); *Johnson*, 2014 WL 2765701, at \*3 ("Most significantly, the template gets things backwards."). "The implication is that the assessment (of the claimant's residual functional capacity—that is, ability to work) precedes and may invalidate the claimant's testimony about his or her ability to work." *Goins*, 2014 WL 4073108, at \*4; *see Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003) (The ALJ's "post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling and rejecting those statements that do not, rather than evaluating the [claimant's] credibility as an initial matter in order to come to a decision on the merits.").

The ALJ cannot discuss only those portions of the record that support his opinion. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). In making a credibility assessment, the ALJ must consider all of the evidence, including "statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (quoting SSR 96-7p, additional citation omitted); *see* 20 C.F.R. § 404.1529(c). Summarizing the evidence is not

enough. The ALJ must consider its meaning and attribute proper weight to it in determining what the claimant is able to do on a sustained basis in a work situation. *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *6 (N.D. Ill. July 9, 2018) (a summary of medical evidence with little analysis "prevents the Court from assessing the reasonableness of the ALJ's decision"); *Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015) ("[M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled.").

Plaintiff claims that the ALJ did not confront persuasive evidence showing the severity of Plaintiff's anxiety and depression. For example, Dr. Achufusi administered screening tests that revealed Plaintiff had "extreme difficulty" and moderate to moderately severe anxiety and depression even when taking medication (Tr. 630, 636-37, 718, 746). The ALJ did not explain how he weighed this evidence. Additionally, the ALJ did not explain why he did not give more serious consideration to the effects of Plaintiff's history of abuse on her ability to function. While he mentioned reports from Plaintiff in which she recalled being sexually, physically, and emotionally abused, he did not acknowledge the consistency between her testimony and her reports to SSA and reports to the consultative examiner and reports to a treating source (Tr. 295, 512, 657). He seemed to acknowledge that because of the abuse, she found it hard to trust people or interact in relationships (Tr. 295, 503, 512), but he rejected the gravity of her distress or denied that it would occur in a work setting. Rather, the ALJ supposed if Plaintiff was able to make a brief trip to the gas station, and shop where she might encounter both men and women, she could tolerate working eight hours per day, five days per week among – or under the supervision of – men, despite having been sexually abused as a child and the victim of domestic violence as an

adult (Tr. 23).

Plaintiff notes that the ALJ's supposition is supported by no evidence or analysis, and is contrary to the evidence in the record. Plaintiff reported at least one instance of experiencing fear of sexual advances by a supervisor which led to termination of her employment, and she directly reported her fear of being in a work situation where a man might be able to exert power or control over her (Tr. 44-46, 295). While some victims of childhood sexual assault do not have disabling symptoms as adults, others do. Her fear is not uncommon for a person with her trauma history. *See* Hall, M., & Hall, J. (2011). *The Long-Term Effects of Childhood Sexual Abuse: Counseling Implications*. The ALJ apparently lacked understanding of the long-term effects of abuse, and instead of believing Plaintiff's testimony or seeking additional information, he impermissibly made assumptions based on something other than evidence. The evidence shows that Plaintiff is an abuse survivor and has experienced men attempting to exert unwarranted and unwelcome control over her in inappropriate and sometimes sexual or violent ways in her home and in the workplace (Tr. 44-46, 295, 512). Plaintiff contends that her fear is not unusual for survivors of childhood abuse; and, studies show a survivor's ability to protect herself is diminished and her ability to adapt and react appropriately is eroded. *Id.*

Plaintiff further contends that the ALJ also failed to consider statements and painful descriptions Plaintiff submitted to SSA. For example, she reported that she avoided authority figures, and she had been written up at work in the past for being violent and yelling (Tr. 294). She also stated that she was scared all the time, she did not trust anyone, and she lived like a hermit (Tr. 293-94). The ALJ emphasized so-called normal findings from in the intake evaluation at the Swanson Center, and interpreted Plaintiff's cessation of treatment there as a sign

she was not disabled (Tr. 19, 22). However, the ALJ did not take into account that Plaintiff went to Swanson Center due to increased sleeping, struggling to control her depression and crying, low concentration, thoughts of suicide, memory impairment, trouble sleeping, low energy, low motivation, and isolation, and she made little progress while there (Tr. 494). She did not think she had any strengths and she had no motivation (Tr. 496, 500). She reported a history of sexual, emotional, and physical abuse (Tr. 512, 518). She reported having thoughts of harming both herself and others in the past 12 months and experiencing unexpected rage or anger (Tr. 510-11). She displayed a flat affect during intake, and even in the controlled, low stress, therapeutic office environment, she exhibited mild impairment of her ability to sustain concentration and attention (Tr. 508). She had short term memory loss and very low concentration. (Tr. 509). She was working, but reported difficulty concentrating (Tr. 516). Notably, she was considered a reliable source of information (Tr. 505). The treatment notes indicate that regardless of her appearance, she had a serious psychiatric diagnosis. In fact, Plaintiff's treating physician, Ted George Ody Achufusi, M.D., believed depression, anxiety, and bipolar disorder caused such significant and troublesome symptoms that Plaintiff's ability to consistently perform work-related functions in a work environment was compromised (Tr. 652-55). All of this evidence supports Plaintiff's symptoms and limitations and was not properly evaluated by the ALJ in his decision.

Plaintiff argues that the ALJ was overly influenced by routine comments in the treatment record about Plaintiff's judgment (Tr. 16, 22). The ALJ mentioned more than once that Plaintiff was able to make "sensible decisions" (Tr. 16, 22) (citing Ex. 5f/108, Tr. 640). It is not clear in what context Plaintiff was making decisions, but it is improbable the evaluator was referring to work situations or abstract decision making. However, the record has examples of Plaintiff's

inability to make sensible decisions, such as when she candidly shared her struggles with the therapist at Swanson Center and disclosed, essentially, letting people take advantage of her due to limitations caused by her depression and anxiety (Tr. 503).

While missing indications of the severity of Plaintiff's mental impairment, the ALJ highlighted innocuous instances of "normal" findings (Tr. 22, 545, 555, 789). This was error. *See Lambert v. Berryhill*, No. 17-1627, at *13 (7th Cir. Jul. 19, 2018) (ALJ erred in relying on "normal" objective findings where physicians did not interpret "normal" medical findings as inconsistent with claimant's reports). Similarly, the ALJ failed to explain why he did not find Plaintiff's need for strong psychiatric medications more persuasive (Tr. 572, 602, 615, 635, 751, 766, 775, 863). *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (claimant unlikely to successfully fool physicians into prescribing powerful medications only to bolster claimant's application for Disability Insurance Benefits).

The ALJ also noted Plaintiff's difficulties following through with treatment but did not acknowledge how that evidenced difficulties in managing oneself and making good decisions, nor did he acknowledge noncompliance is not a factor to be held against a person with mental illness. A common consequence of mental disorders is the patient's inability to take prescribed medications and follow suggested treatment regimens. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) (mental patients "are often incapable of taking their prescribed medications consistently."); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010) ("The administrative law judge's reference to Spiva's failing to take his medications ignores one of the most serious problems in the treatment of mental illness—the difficulty of keeping patients on their medications."). A common consequence of mental illness is for the patient to have difficulty

managing her medications or treatment. *Martinez*, 630 F.3d at 697. Further, Plaintiff told the ALJ she stopped going to Swanson Center because of financial constraints (Tr. 42). It is improper to fault a claimant for not obtaining treatment she cannot afford. *Roddy v. Astrue*, 705 F.3d 631, 638-39 (7th Cir. 2013).

To the extent the ALJ found Plaintiff's ability to work part-time in the nursing home laundry evidence weighing against her claim, that too was error. Part-time work is not inconsistent with and does not preclude a finding of disability. *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013). Typically, the willingness to work despite significant impediments is evidence supporting a claim. *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). The SSA's own policy encourages disabled people to attempt to work.

The ALJ also disregarded the regulatory directive to "take into account" symptoms descriptions that were "reasonably consistent" with the record as a whole. 20 C.F.R. § 404.1529(c)(3) ("[A]ny symptom-related functional limitations and restrictions which you . . . report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled." *See also* 20 C.F.R. § 404.1529(c)(4) ("Your symptoms . . . will be determined to diminish your capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the . . . evidence."). Instead of determining that symptoms that were "reasonably consistent" with the record caused limitations as Plaintiff described, the ALJ applied a legally erroneous standard and found she was not limited because her symptoms were "not entirely consistent" with the record.

In a similar case, acknowledging the legal error, the court in *Minger v. Berryhill*, 307

F.Supp.3d 865, 872-73 (N.D. Ill. 2018), held that the "not entirely consistent" standard is not correct and that discussion of a claimant's allegations under the ambit of the "not entirely consistent" standard must result in remand. *See also Farley v. Berryhill*, 314 F.Supp.3d 941, 946 (N.D. Ill. 2018) (remanding because ALJ's use of "not entirely consistent" standard was too rigorous and did not align with the appropriate "reasonably accepted as consistent" standard"); *Bancolita v. Berryhill*, 2018 WL 2731227 *4 (N.D. Ill. Jun. 7, 2018). The ALJ also ignored the preponderance of the evidence standard and undertook evaluation of the record with no discernable evidentiary threshold (or an erroneous one) for establishing disability. That too is error. *See Justin H. v. Berryhill*, CIVIL NO. 2:18cv383, at *29 (N.D. Ind. Jun. 7, 2019) (error where ALJ did not evaluate testimony in accord with "more likely than not" preponderance of the evidence standard) (citing 20 C.F.R. § 404.953(a)). For all of these reasons, remand is warranted on the issue of the proper evaluation of Plaintiff's symptoms and limitations.

Next, Plaintiff argues that the ALJ erred in evaluating the opinion evidence. An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If controlling weight is not given, an ALJ "must offer good reasons for discounting a treating physician's opinion" that are supported by substantial evidence. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted). When an ALJ gives "good reasons" for not giving controlling weight to a treating physician's opinion, the opinion still has value in the disability determination and the ALJ must apply the regulatory factors to determine what lesser weight to afford the opinion. *Campbell*, 627 F.3d at 308. As with all opinions, the ALJ must look at a variety of

factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2)-(6). If the ALJ does not properly analyze giving the treating source opinion controlling weight and, if necessary, determine what less-than-controlling weight to afford the opinion, such "[a]n inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017).

The December 2016 opinion submitted by Plaintiff's treating physician, Ted George Ody Achufusi, M.D., paints a very different picture of Plaintiff and her ability to function in the workplace than does the ALJ's decision. In handwritten notations on the Mental Assessment of Ability to Do Work-Related Activities form, Dr. Achufusi explained that Plaintiff suffered from depression, anxiety, and bipolar disorder and that she did not like to be around people (Tr. 652). He also explained that she did not respond well to supervisors, that she was avoidant, and that she had difficulties with punctuality (Tr. 652). He also indicated she needed repeated reminders about tasks, was upset easily, and did not interact well with coworkers (Tr. 652). Dr. Achufusi believed Plaintiff did not have the ability to behave in an emotionally stable manner, relate predictably in a social manner, or demonstrate reliability (Tr. 652). He did not believe she could make simple work-related decisions, respond appropriately to usual work situations, deal with changes in a routine work setting, respond appropriately to supervisors, or respond appropriately to coworkers (Tr. 652). The doctor indicated that Plaintiff's emotional and mental symptoms could reasonably

cause her to be unable to complete tasks in a timely manner at least once an hour every day, and

he anticipated she would miss four or more days of work per month due to her conditions (Tr.

653). He noted she had been fired in the past due to her symptoms (Tr. 653).

The ALJ did not make the findings required to determine whether Dr. Achufusi's opinion

was entitled to controlling weight. He did not determine whether the opinion was "well-

supported" or whether it was "not inconsistent with the other substantial evidence." Rather, the

ALJ simply "[gave] little weight to the doctor's opinion" without setting forth a legal standard,

weighing all the facts, or explaining how he arrived at his conclusion (Tr. 21).

That the ALJ said the opinion was entitled to "little weight" does not answer the

"controlling weight" question; they are different tests. Presumably, the Regulations would not

have placed the controlling weight test first in the regulatory analysis if it could be circumvented

by simply giving a treating source opinion "little weight." 20 C.F.R. § 404.1527. Well-settled

principles of statutory construction instruct that laws should be read so that "if it can be

prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v.

Andrews*, 534 U.S. 19, 31 (2001). If "little weight" is enough, the controlling weight test is

superfluous. Similarly, the "controlling weight" test is specific to treating source opinions while

the multi-factor weighing test is applicable to all opinions. 20 C.F.R. § 404.1527. The

"well-supported" and "not inconsistent with the other substantial evidence" standard reflect the

enhanced value the agency places on the treating source's opinion as compared with the opinions

of doctors who had less connection to the claimant. Again, principals of statutory construction are

helpful; typically, statutory provisions with broader and more general applicability are not

permitted to subsume provisions with more specific terms and applicability. *See, e.g., McDonnell*

*v. Cisneros*, 84 F.3d 256, 261 (7th Cir. 1996) (discussing presumption that exclusive remedies and limitations in statute should not "be circumvented by extending a more generally worded statute over the subject of the more specific one."). Thus, the first error in the ALJ's treatment of Dr. Achufusi's opinion was his failure to consider giving it the controlling weight to which it may have been entitled.

It is also telling that the ALJ did not address any of the regulatory factors that must be considered if the ALJ decides the opinion is not entitled to controlling weight (Tr. 21-22). 20 C.F.R. § 404.1527. Even if the ALJ had engaged in the proper analysis to justify not affording Dr. Achufusi's opinion controlling weight, he was still required to address the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to give the opinion. *Campbell*, 627 F.3d at 308; *Scrogham*, 765 F.3d at 697-98 & n.48 (indicating that the ALJ's failure to address the appropriate regulatory factors was not harmless). In lieu of engaging in any analysis required by the regulations, the ALJ simply listed facts he believed contrasted with aspects of Dr. Achufusi's opinion and left it to the reader's imagination to determine how or why the juxtaposed facts detracted from the opinions (Tr. 21). This format hints at the ALJ's thought process but is insufficient to "understand the link between the evidence and the ALJ's decision" and "trace the ALJ's path of reasoning." *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000); *Enuenwosu v. Berryhill*, No. 16 C 5719, 2017 WL 2684092, at *6 (N.D. Ill. June 21, 2017). If the court cannot determine what standard the ALJ applied in deciding the opinion was worth little weight, the court cannot determine whether the ALJ applied the correct standard or if he applied the standard correctly. Regardless of the legal standard, the ALJ was not free to consider only evidence supporting his conclusion when his task was to weigh all of the evidence in the record. *See Scott*

*v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ also erred in giving greater weight to the opinions of the nonexamining state agency psychologists whose opinions differed from Dr. Achufusi's (Tr. 20, 76-95, 98-121, 652-55). The reasons cited by the ALJ for affording great weight to the state agency doctors' opinions are largely the same as he cited for discounting Dr. Achufusi's opinion and disbelieving Plaintiff generally. For example, he mentioned so-called normal exam findings, a few "normal" activities, and that Plaintiff was in regular classes until she left school in the eighth grade (Tr. 20). As discussed elsewhere herein, these reasons are not legally sufficient, and in his discussion of the nonexamining source opinions, the ALJ again cited only a portion of the evidence and did not explain how the record as a whole logically supported the conclusion asserted.

Controlling weight is a term of art meaning that the ALJ "adopts" the limitations from the treating source opinion and uses those limitations as the claimant's RFC. *See* SSR 96-2p. An ALJ "must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion" if the criteria are met. *See Kaminski v. Berryhill*, 894 F.3d 870, 875-76 (7th Cir. 2018); *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990); *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011); *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993); *see also Washington v. Colvin*, Cause No. 2: 14-CV-421- PRC (N.D. Ind. Feb. 29, 2016) (unpublished).

Again, Dr. Achufusi's opinion is entitled to controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527. "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." *See* SSR

96-2p. The requirement for support is driven by the need to "ensure that there is a sound medical basis for the opinion" meaning "the clinical and laboratory diagnostic techniques that the medical source uses are in accordance with the medical standards that are generally accepted within the medical community." *Id*. Deciding whether an opinion is well-supported by medical evidence "requires an understanding of the clinical signs and laboratory findings in the case record and what they signify." *Id*. "Not inconsistent" is "a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (*i.e.*, it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." *Id*.

Dr. Achufusi's opinion is "well-supported" by the clinical and diagnostic "techniques" doctors typically use to manage a patient's mental health "in accordance with the medical standards that are generally accepted within the medical community." The evidence shows Dr. Achufusi is a medical doctor (M.D.) who practices in association with La Porte Physician Network (Tr. 670). Throughout the relevant time period, he personally evaluated Plaintiff to assess her need for continuing treatment with psychiatric medication, and, in fact, prescribed, changed, and adjusted that medication as needed (Tr. 572, 602, 615, 635, 751, 766, 775, 863). The medications he prescribed were appropriate and consistent with severe depression and anxiety, which supports his opinion. *See, e.g., Scrogham*, 765 F.3d at 701 (evidence that claimant was willing to take powerful medication, and that physicians were willing to prescribe this course of treatment, reflects that his symptoms "caused him real problems"). He also referred her to Swanson Center when he believed she might benefit from counseling (Tr. 628, 635). In addition to evaluating and monitoring the clinical signs of Plaintiff's depression and anxiety, Dr. Achufusi

administered two different screening questionnaires, the PHQ-97 and GAD-78, on at least three occasions to measure and quantify her symptoms (Tr. 630, 636-37, 718, 746). The tests are considered reliable by the medical community and are commonly used to detect and manage anxiety and depression. The questionnaires yielded scores indicative of moderately severe depression even while Plaintiff was being treated with medication and consistently severe anxiety, despite treatment (Tr. 630, 636-37, 718, 746). There is no evidence suggesting Dr. Achufusi employed unconventional, unapproved, or unreliable methods in treating or evaluating Plaintiff or that his opinions are otherwise based on anything other than "medical standards that are generally accepted within the medical community. *Kaminski v. Berryhill*, 894 F.3d 870, 875-76 (7th Cir. 2018).

Additionally, Dr. Achufusi's opinion is "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2). Again, the ALJ did not make the required finding so there is no finding or conclusion for the court to review. And the record does not reveal any contradiction or conflicting evidence that render Dr. Achufusi's opinion "not inconsistent with the other substantial evidence."

"Not inconsistent" means that nothing in the record causes the adjudicator to have serious doubts about the opinion. It does not mean the opinion must be "supported directly by all of the other evidence" or even that the opinion "be consistent with all the other evidence" as long nothing substantial "contradicts or conflicts with the opinion." SSR 96-2p. Arguably, the list of evidence the ALJ cited in support of his decision to afford Dr. Achufusi's opinion little weight could be construed as evidence contradicting or conflicting with the opinion. However, the ALJ did not make that finding, and he did not even explain why the facts he listed detracted from the

opinion. He also failed to weigh the list of facts against the other evidence in the record that supports the opinion.

For example, the ALJ said, "While he opined that the claimant could not make simple work-related decisions, the claimant is currently working as a laundry worker II, an unskilled SVP 2 job . . . was [reportedly] able to make sensible decisions" (Tr. 21). Here, the ALJ ignored that Dr. Achufusi qualified his comment regarding Plaintiff's ability to make work-related decisions with a hand-written comment explaining that "she needs to be told repeatedly what to do" (Tr. 652). The ALJ also failed to inquire about the specific work-related decisions Plaintiff was required to make at her part-time employment in the nursing home laundry room where she worked alone folding linens. And, although the ALJ implied the vocational expert testified to the decision-making required for the job, he merely identified the Dictionary of Occupational Titles (DOT) number and the SVP level indicating that it was an unskilled job (Tr. 58-59). There was nothing about his testimony that conflicted with or contradicted Dr. Achufusi's opinion. As for the comment about her ability to make "sensible decisions," the ALJ's comparison is illogical (Tr. 555, 652). It appears Dr. Achufusi's comment in the treatment record about "making sensible decisions" was a euphemism indicating he did not believe she was a danger to herself or others despite her increased anger and urge to "fight people randomly" (Tr. 552-55). It is unclear why Plaintiff's ability to refrain from harming herself or others reflects on Dr. Achufusi's opinion of her ability to consistently make appropriate choices in a work environment.

The ALJ also states, "the record describes the claimant's attention and concentration as only mildly impaired (Exhibit 2F/15)." (Tr. 21). However, looking at Exhibit 2F page 15 reveals the quote is from a check-box form, and in the text following the standardized language, the

evaluator wrote, "She reports short term memory loss. She writes things down to keep track of what she needs to do. She has very low concentration." (Tr. 508-09). The ALJ also failed to take into account that the observation was made in a controlled therapeutic environment and was a one-time observation. *See, e.g., Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (discussing relationship of environment and functioning). He also did not mention later comments in the same treatment notes about how difficulty concentrating was interfering with work (Tr. 516). Moreover, the implication from the ALJ's citation of a few positive signs here and there in the treatment notes "reveals an all-too-common misunderstanding of mental illness" that ignores its variable and unpredictable nature. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)("cherry-picking" medical evidence, particularly because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition.").

The ALJ committed a similar error when he cited evidence suggesting Plaintiff's "mood and affect were described as cooperative, calm, with appropriate mood and affect (Exhibit 5F/23, 5F/5, l0F/80)" and juxtaposed it with Dr. Achufusi's opinion Plaintiff would have difficulty responding to changes and people in the work environment (Tr. 20). Again, there is a vast difference between the doctor's office and the workplace and remaining calm for 20-40 minutes in a therapeutic environment is not the same as tolerating an 8-hour workday. Again, the ALJ drew illogical conclusions about Dr. Achufusi's opinion due to evidence that was not actually contradictory. *See Neyhart v. Comm'r of Soc. Sec.*, CASE NO. 3:17-CV-00437-MGG, at *11 (N.D. Ind. Sep. 28, 2018) ("If a person is "alert and oriented," does that mean they cannot be

simultaneously fatigued?"). And again, the ALJ did not explain how these the facts contradicted

the opinion. Rather, the ALJ ignored evidence contradicting his own conclusion including the fact

Plaintiff worked alone and her employer was aware of her medical conditions prior to hiring her

and agreed to work with her (Tr. 47-48).

Citing the fact Dr. Achufusi checked the most extreme option for monthly absences, four

days per month, the ALJ pointed out that Plaintiff testified that "in the 7 months that the claimant

has been working, she has not missed four or more days of work per month" (Tr. 20). The ALJ

neglected to mention that Plaintiff works only part-time, averaging around three days per week

and that she estimated missing 10 days in seven months of employment (Tr. 37, 64). Three days

of a five-day week is about 60%. Taking her part-time status into account, Plaintiff's absences

were equivalent to 2-3 days per month on a fulltime schedule. Considering both she and Dr.

Achufusi were estimating, that consistent absences in excess of two per month preclude

employment, and that she testified she had been counseled about her absences by her supervisor,

the potency of the ALJ's contrast between Dr. Achufusi's opinion and Plaintiff's prediction is

weak (Tr. 63-65). It was improper for him use the facts in a way that created a perception of

inconsistency where none existed. *See* Social Security Ruling 11-2p (giving examples of apparent

inconsistencies not indicative of true contradiction); *Mayberry v. Colvin*, Civil No. 14-cv-1139-

CJP.[1] (S.D. Ill. Sept. 3, 2015) (unpublished) (ALJ incorrectly placed weight on an inconsistency

that did not necessarily exist).; *Williams v. Astrue*, Cause No. 1: 11-cv- 1150-WTL-DKL (S.D.

Ind. Sept. 10, 2012)(unpublished) (supposed inconsistencies created by ALJ assumptions).

The ALJ's discussion of Dr. Achufusi's opinion shows he did not specifically determine

whether the opinion was entitled to controlling weight. The ALJ's failure to consider whether the

opinion was entitled to controlling weight is harmful legal error because the opinion at issue would arguably require a finding of disability if it was given controlling weight. Even if the opinion was not given controlling weight, the ALJ did not offer a legally sufficient, logical, or factually supported reason for not giving the opinion greater weight in determining Plaintiff's ability to perform work-related tasks. Thus, remand is appropriate on this issue.

Next, Plaintiff argues that the vocational findings are founded upon legal error and are not supported by substantial evidence. As noted above, the Commissioner uses a five-step evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(iv). *Scheck*, 357 F.3d at 699-700. Steps four and five are the "vocational" steps where the ALJ must consider the medical and vocational factors to determine whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)-(iv). If a finding of disability is not made on medical factors alone, after step three, the ALJ assesses the claimant's residual functional capacity ("RFC") for use at the fourth and fifth steps. Because the step four and step five determinations depend on the RFC, the validity of a vocational denial often hinges on the validity of the RFC determination. *See Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The validity of a step five finding based on testimony from a vocational expert is particularly dependent upon an accurate RFC finding because the Commissioner carries the burden of production at step five and must produce reliable evidence of a significant number of jobs existing in the national economy for a person matching the claimant's vocational profile to support a finding that the claimant is not disabled. *Zurawski*, 245 F.3d at 886.

Plaintiff argues that the ALJ's RFC determination employs reasoning that is contrary to the law and is not based on substantial evidence and, therefore, the resulting vocational finding is

insufficient to support the ALJs determination that there exists a significant number of jobs for an individual with Plaintiff's vocational profile.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."). When determining an individual's RFC, the ALJ must consider the combined effects of all limitations that arise from medically determinable impairments based on the record as a whole, even those that would not be considered severe in isolation. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014); *Terry*, 580 F.3d at 477; *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir.2008); 20 C.F.R. § 404.1523. Similarly, to elicit reliable evidence from a vocational expert, an ALJ must pose hypothetical questions to the witness that include all limitations supported by the medical evidence in the record and the hypothetical "must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (articulating that an RFC for unskilled work "by itself does not provide any information about [the claimant's] mental condition or abilities").

Plaintiff points out that many of the individual limitations set forth in the Dr. Achufusi's statement would preclude employment. For example, regardless of whether Plaintiff is likely to miss 2 or 4 days of work per month, nothing in the record supports a finding that she would miss less than two days per month. The ALJ did not cite any evidence that would support such a finding. The vocational expert testified that there would be no job for a person with that rate of

24

absenteeism (Tr. 63). The same is true if Dr. Achufusi's opinion of Plaintiff's ability to interact is believed or his opinion of her ability to complete tasks without repeated instruction and redirection to stay on task (Tr. 61-64). Accordingly, as the vocational findings are not supported by substantial evidence, remand is required.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

Entered: February 10, 2020.

s/ William C. Lee
William C. Lee, Judge
United States District Court